IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILILNOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11 CV 5654 |
| ) | |
| JOLIET POLICE OFFICER BANAS, ) | Judge John Z. Lee |
| JOLIET POLICE OFFICER CARDWELL, ) | |
| JOLIET POLICE DEPARTMENT, and ) | |
| THE CITY OF JOLIET, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Moore brings this action against Defendants the City of Joliet, the Joliet Police Department, Officer Thomas Banas, and Officer Patrick Cardwell, alleging false arrest, false imprisonment, and malicious prosecution.[1] Moore claims he was wrongly identified as the individual who sold Officer Banas crack cocaine during a videotaped transaction on June 10, 2010, and was arrested without probable cause. Defendants now move for summary judgment as to these claims. For the following reasons, the Court grants in part and denies in part the motion.

### Factual Background[2]

Thomas Banas, a police officer employed by the Joliet Police Department, acquired a phone number during the course of an investigation.[3] He believed that he could call the number

---

[1] Moore voluntarily withdrew his claim for intentional infliction of emotional distress in his response brief to Defendants' motion. *See* Pl.'s Resp. 1 n.1.

[2] The following facts are undisputed, unless otherwise stated.

[3] Moore objects to this fact and several others on the basis that they violate a prior court order striking references to a confidential informant. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 5–6, 8–11, 13–16, 23, 25–28. The Court struck those references, however, because in arguing they did not need to disclose the

to set up a crack cocaine deal. Defs.' LR 56.1(a)(3) Stmt. ¶ 5. On June 10, 2010, Officer Banas called the phone number and spoke with someone, who told him to go a specific intersection in Joliet. *Id.* ¶ 18.[4] Officer Banas drove to the intersection. There, he met an individual, who entered the officer's car and sold him three plastic bags of crack cocaine for fifty dollars. *Id.* ¶¶ 19–22. Officer Banas secretly videotaped the transaction. *Id.* ¶ 26; Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. C.

That same day, Officer Banas searched for the subscriber of the telephone number through the LexisNexis Accruint database. Defs.' LR 56.1(a)(3) Stmt. ¶ 10. That search identified Moore as the subscriber of the phone number. *Id.* ¶ 11. Banas then searched Moore's name on the police department's database and the Secretary of State's Law Enforcement Agency

---

identity of the informant, Defendants characterized the informant as a "tipster" who merely provided the phone number that initiated the investigation. *See* 5/9/14 Order at 2. Consequently, Defendants could not have it both ways, downplaying the significance of the informant when it suits them, only to later rely on interactions with the informant in an attempt to establish probable cause on summary judgment. *Id.* at 3. Defendants have since complied with the Court's order and deleted any reference to the informant. *See generally* Defs.' LR 56.1(a)(3) Stmt. Defendants' motion is now consistent with their claim that the investigation resulting from the tip and Officer Banas' identification of Moore — and not the substance of any conversations with the informant — were the sole bases of probable cause. Moore's objections are therefore overruled, and the Court deems the facts admitted. *See Sisto v. NXP Semiconductors USA, Inc.*, No. 11 C 7030, 2013 WL 870604, at *2 n.1–13 (N.D. Ill. Mar. 7, 2013) (deeming admitted facts that plaintiff did not deny, but erroneously objected to on other grounds).

[4] Moore argues this fact, as well as many others, should be stricken because they are either hearsay or information obtained from hearsay. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 5–6, 8–11, 13–16, 18, 21–22, 24–33, 43–44. This argument is meritless. To be hearsay, an out-of-court statement must be offered for the truth of the matter asserted. Fed. R. Evid. 801(c)(2). The statements in question are offered not for that reason, but to prove Moore's probable cause determination was reasonable under the circumstances. *See, e.g., Brown v. Mazurski*, No. 99 C 2194, 2000 WL 1745242, at *3 (N.D. Ill. Nov. 28, 2000) ("The City does not necessarily offer the statement for the truth of the matter asserted, but as evidence of [the officer's] state of mind at the time of the arrest. If [the officer] had a reasonable basis for believing that [plaintiff] possessed the money from the drug transaction, probable cause may have existed."). Moreover, Moore cites no authority for the proposition that evidence obtained through an investigation of information provided by a hearsay declarant should also be deemed inadmissible. To the extent Moore intends to rely on the fruit of the poisonous tree doctrine, this doctrine applies to evidence obtained in violation of the Fourth Amendment, not evidence obtained from hearsay. *See United States v. Swift*, 220 F.3d 502, 507 (7th Cir. 2000).

Database. Through those searches, Officer Banas obtained a photograph of Moore, his personal information, and a physical description. *Id.* ¶¶ 13–14, 16.

Officer Banas compared the photograph of Moore to the image on the videotape that he had taken of the suspect and determined — albeit, incorrectly — that Moore was the individual who had sold him crack cocaine on June 10. *Id.* ¶¶ 25–26; Defs.' Reply Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 2. Using this information, Officer Banas prepared a police report and warrant application, which Officer Cardwell then photocopied and used to obtain a warrant for Moore's arrest. *Id.* ¶¶ 29–31. Moore was arrested on the warrant in October 2010. *Id.* ¶ 34. Those charges were dismissed on March 1, 2011. *Id.* ¶ 36.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).

## Analysis

**I.    Qualified Immunity**

Defendants argue the doctrine of qualified immunity entitles them to summary judgment on all of Moore's claims.[5]  Defs.' Mem. 9–11.  Qualified immunity "protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013).  The doctrine protects officers "who act in ways they reasonably believe to be lawful." *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987).

Application of the doctrine involves two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011).  The second question is not at issue in this case.  At the time of the alleged violation, the law was undoubtedly established that "the Fourth Amendment is violated by a full-blown arrest that is not supported by probable cause." *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009).  The Court therefore limits its analysis to the former inquiry.

In a case such as this, that inquiry centers around probable cause.  "In an unlawful arrest case in which the defendants raise qualified immunity as a defense, this court will 'determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed.'" *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 459 (7th Cir. 2010) (quoting *Humphrey v. Staszak*, 148 F.3d 719,

---

[5]    Defendants also argue that no genuine issue of material fact exists from which a lack of probable cause could be inferred.  *See* Defs.'s Mem. 2–9.  Because the defense of qualified immunity necessarily involves a probable cause determination in this case, the Court collapses its discussion of these issues for the purposes of this opinion.

725 (7th Cir. 1998)). Probable cause exists when "the facts and circumstances within [the officers'] knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed . . . an offense." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir. 1993) (internal quotations omitted).

In the abstract, Officer Banas' actions appear to be that of a reasonably prudent officer. Given a tip, he calls a phone number to set up the purchase of crack cocaine. He videotapes the transaction, runs a search to determine the owner of the phone number, and compares the video to an image and description of the supposed owner of the telephone. They are both young, black males with short hair. Officer Banas determines them to be the same person. But the Court need not view Officer Banas' actions in the abstract. The video, image, and description are all part of the summary judgment record. And when examined together, they immediately "raise a substantial question as to whether a prudent officer would have probable cause to believe" the two individuals were the same person. *Maxwell*, 998 F.2d at 434.



Pictured on the left is the individual who entered Officer Banas' car and sold him crack cocaine on June 10, 2010. Pictured on the right is Moore. Even accounting for differences in picture quality and perspective, a reasonable jury could determine that the images show two distinct people, and the effect is more evident when watching the video. Not only is their general appearance noticeably different, but several specific features stand out. Moore, for example, is readily distinguished by his fairer skin, thick eyebrows, prominent eye lashes, higher cheekbones, narrower mouth, and lower hairline. Further, it is not as if Officer Banas was pressed for time or forced into making a snap judgment about the identity of the person in his car. He had no less opportunity than that of the Court. And one would certainly expect a reasonably prudent officer, trained and experienced in differentiating between suspects, to compare the evidence side-by-side before obtaining a warrant to effectuate the arrest.

In addition, the descriptions of Moore, upon which Officer Banas relied, do not, as Defendants suggest, "match up to the person Banas observed in his vehicle and on the videotape." Defs.' Mem. 8. The police report in question listed Moore as "5'9", 180 lbs." Defs.' LR 56.1(b)(3)(3) Stmt. ¶ 6. The male in the video, while appearing only modestly (yet still visibly) taller than 5'9", is substantially thinner than 180 lbs. Of course, these discrepancies alone would not destroy probable cause; it is difficult to judge the height of someone who is seated, and fluctuations in weight can account for a thinner appearance. Nonetheless, the description of Moore does not, as Defendants argue, work in their favor and a reasonable jury could certainly find that the person on the videotape did not match Moore's description.

As it stands, the only remaining fact to conclusively support Officer Banas' probable cause determination is that the phone number he called to set up the transaction was registered to Moore at the time, at least according to the LexisNexis Accruint database. But this fact cannot

be the entire basis for probable cause in this case. Officer Banas justifiably understood the man on the phone would be the same individual he would be meeting in person; Officer Banas spoke with him moments before the transaction took place to facilitate the meeting and the man on the phone expressed "he would be there in a minute." *See* Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. F. Consequently, Officer Banas could only have probable cause to arrest Moore for his involvement with the drug transaction if he had probable cause to believe Moore was the individual in the car with him.

Defendants stress the efforts of Officer Banas, claiming he went "above and beyond" by "viewing the [photo and videotape] together." Defs.' Mem. 7. The existence of probable cause, however, turns not on the efforts of the officers but on the information obtained from those efforts. More specifically, the presence or absence of probable cause in a case such as this will turn "on the resemblance of [Moore] to the descriptors and [person in the video]." *Maxwell*, 998 F.2d at 435. And in such cases, "the question necessarily becomes a factual one for the jury." *Id.* Therefore, the Court cannot conclude on these facts that a jury would be unreasonable in finding the differences between Moore and the man in the video "are too significant to support a finding of probable cause." *Id.*

Nor, for that matter, can the Court find that Officer Banas is entitled to qualified immunity at this juncture. "[I]f a reasonable officer would not have believed that [Moore was the individual in the car], then [Officer Banas], whatever [he himself] did or did not believe, [is] acting contrary to clearly established law and [is] not entitled to qualified immunity." *Id.* at 436. In other words, because a jury could reasonably find Officer Banas' determination to be objectively unreasonable, he is not entitled to qualified immunity. *See id.*

7

Officer Cardwell, on the other hand, is entitled to qualified immunity. Based on the record before the Court, it appears Cardwell's role was merely to copy the police report, prepare the warrant application, and obtain the warrant. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 29–30. It was reasonable for him to have mistakenly believed that probable cause existed, relying upon his fellow officer's probable cause determination. *See Spiegel v. Cortese*, 196 F.3d 717, 726 (7th Cir. 2000).

## II.  False Imprisonment

Defendants also seek summary judgment on Moore's false imprisonment claim, arguing they had reasonable grounds to believe Moore had committed a crime. Defs.' Mem. 11. This argument necessarily depends on Defendants having been successful on the one above; that is, they argue "[s]ince Defendants had probable cause to apply for the arrest warrant, or at the very least were entitled to qualified immunity on the issue, Plaintiff's claim is barred." *Id.* at 12. Because the Court has already rejected this argument as to Officer Banas, summary judgment is denied as to Moore's false imprisonment claim against him; it is granted as to Officer Cardwell.

## III.  Malicious Prosecution

Lastly, Defendants contend no genuine issue of material fact exists from which a jury could infer malice to support a malicious prosecution claim. *Id.* at 12–15. Illinois defines malice in this context as "the initiation of a prosecution for any reason other than to bring a party to justice." *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. Ct. 2000). "[T]he trier of fact may infer malice from lack of probable cause if there is no other credible evidence which refutes that inference." *Frye v. O'Neill*, 520 N.E.2d 1233, 1242 (Ill. App. Ct. 1988).

8

Defendants rely on two points to argue malice cannot be reasonably inferred from these facts. First, Defendants contend that any mistake could only be considered an honest one, given the "extensive action [Officer Banas took] to ensure that Patrick Moore was the person selling him cocaine that day." Defs.' Mem. 13. Second, they assert "[t]he thought that Defendants proceeded with malice is also outrageous since [the officers] did not know Moore and had never had contact with him," and therefore had no reason to "frame" him. *Id.* at 14. The problem with Defendants' argument is that, while the inference they draw is by no means unreasonable, the facts do not conclusively refute the alternative conclusion. Given that Officer Banas possessed and viewed a videotape showing that Moore was not the individual in the car with him but proceeded with his arrest anyway, it would not be unreasonable for a jury to find he acted with malice. As the court in *Frye* explained:

> Where two conflicting inferences may be drawn from the evidence — one of good faith actions on the part of the defendant and the other of actions inconsistent with good faith or, in other words, malicious actions — the question whether the defendant acted with malice is for the trier of fact to determine. In order to create a question for the trier of fact, *it is not incumbent upon the plaintiff to present direct affirmative evidence of lack of good faith on the part of the defendant*. Rather, circumstantial evidence which would support an inference of malice is sufficient.

*Frye*, 520 N.E.2d at 1242 (citing *Mack v. First Security Bank*, 511 N.E.2d 714 (Ill. App. Ct. 1987)) (emphasis added). Accordingly, the Court denies summary judgment on Moore's malicious prosecution claim as to Officer Banas; it is granted as to Officer Cardwell.

## **Conclusion**

For these reasons, the Court grants in part, and denies in part Defendants' motion for summary judgment [70]. The Court grants summary judgment on all counts with respect to Defendant Officer Cardwell. In all other respects, Defendants' motion is denied.

**SO ORDERED**  ENTER: 9/23/15

_____
**JOHN Z. LEE
United States District Judge**